UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61056-CIV-ALTMAN

**WENDELL LOCKE**,

    Plaintiff,
v.

**ELIZABETH WARREN,**
*as Clerk of Courts.*

    Defendant.
_____/

## **ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss (the "Motion") [ECF No. 17], filed on August 28, 2019. The Plaintiff filed a Response in Opposition (the "Response") [ECF No. 20] on September 11, 2019. And the matter ripened on September 12, 2019, when the Defendant filed her Reply (the "Reply") [ECF No. 21].

## **THE FACTS**

This case implicates the common law right of access to judicial records. *See* Complaint [ECF No. 1] ¶ 1. The Plaintiff, Wendell Locke, was the attorney of record in *J. Pearl Bussey-Morice v. Patrick Kennedy* (the "*Bussey* case"), a civil rights case in the Middle District of Florida. *See id.* ¶4. On January 8, 2015, the Court entered final judgment against the plaintiff in the *Bussey* case. *See id.* ¶ 5. The court then "unilaterally" reassigned the case from Judge Charlene E. Honeywell to Judge Carlos E. Mendoza. *See id.*

In response to that reassignment, the Plaintiff called the Clerk's office to ask how (and why) the case had been reassigned. *See id.* ¶ 6. A member of the Clerk's office informed him that an operations manager had made the transfer. *See id.* Within "minutes" of that call, one of Judge

Mendoza's law clerks called the Plaintiff and asked him if he had any questions about the reassignment. *See id.* ¶ 7. The clerk explained that there was a "Standing Order" regarding the reassignment—but, when pressed for a copy of that order, the clerk retracted that explanation. *See id.* Now changing his story, the clerk said that the case was reassigned because of an email that had been sent by a third federal judge, Anne Conway. *See id.* ¶ 8. But, when the Plaintiff asked for a copy of that email, the clerk refused to produce it. *See id.*

On April 4, 2018, the Plaintiff sent the Clerk of Court for the United States District Court for the Middle District of Florida a written request for the following litany of what he calls "judicial records," *see id.* ¶ 9:

- Any and all emails, correspondence, and records from the Clerk regarding any policy changes of then Judge Anne C. Conway in 2014;

- Any and all emails, correspondence, and records from the Clerk regarding any policy changes of then Judge Anne C. Conway in 2015;

- Any and all emails, correspondence, and records from the Clerk regarding any policy changes by then Chief Judge Anne C. Conway in 2014 concerning assignment and/or reassignment of cases to or from Judge Charlene Edwards Honeywell;

- Any and all emails, correspondence, and records from the Clerk regarding any policy changes by then Chief Judge Anne C. Conway in 2015 concerning assignment and/or reassignment of cases to or from Judge Charlene Edwards Honeywell;

- Any and all emails, correspondence, and records from the Clerk regarding any policy changes by then Chief Judge Anne C. Conway in 2014 concerning assignment and/or reassignment of cases to or from Judge Carlos E. Mendoza;

- Any and all emails, correspondence, and records from the Clerk regarding any policy changes by then Chief Judge Anne C. Conway in 2015 concerning assignment and/or reassignment of cases to or from Judge Carlos E. Mendoza;

- Any and all emails, correspondence, and records concerning the case reassignment of case number 6:11-cv-970-Orl-41GJK to Judge Carlos E. Mendoza; and

- Any and all emails, correspondence, assignments, and records from Judge Charlene Edwards Honeywell to Carlos E. Mendoza concerning case number 6:11-cv-970-Orl-41GJK

*Id.* at 4–5. The Clerk's office did not respond to his request. *See id.* ¶ 10.

On April 18, 2019, the Clerk's office, in its efforts to make sense of why a practicing attorney would request the private correspondence of three federal judges, docketed the request in the *Bussey* case as a Motion to Disqualify. *See id.* ¶ 11–12. According to the Plaintiff, this "mischaracterization" of his request was "tantamount to the commission of wire fraud." *See id.* ¶ 13. Judge Mendoza likewise interpreted the request as a motion to disqualify—and promptly denied it. *See id.* ¶ 14–15.

For reasons unrelated to the request for judicial records, the Plaintiff was sanctioned for his conduct in the *Bussey* case. *See generally Bussey-Morice v. Kennedy*, No. 611CV970ORL41GJK, 2018 WL 4101004, at *18 (M.D. Fla. Jan. 12, 2018), *reconsideration denied*, No. 611CV970ORL41GJK, 2018 WL 4091899 (M.D. Fla. Aug. 27, 2018), *aff'd sub nom. Bussey-Morice v. Kennedy*, 775 F. App'x 1003 (11th Cir. 2019).[1] J. Pearl Bussey-Morice, the Plaintiff in that case, appealed the sanctions ruling to the Eleventh Circuit Court of Appeals, where he argued that, because the reassignment had been improper, Judge Mendoza (the judge to whom the *Bussey* case had been reassigned) lacked jurisdiction to impose the sanctions. *See Bussey-Morice v. Kennedy*, 775 F. App'x 1003, 1004 (11th Cir. 2019). The Eleventh Circuit rejected that argument. *See id.*

The Plaintiff (the sanctioned attorney in the *Bussey* case) filed this case on April 25, 2019. *See generally* Compl. In his Complaint, the Plaintiff levies two counts. *First*, he asserts the federal common law right of access to judicial records and seeks copies of the above-described correspondence. *See id.* at 6–8. *Second*, he asks this Court to declare that he is entitled to that

---

[1] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (citation omitted). And public court records "are among the permissible facts that a district court may consider." *Id.* (citations omitted). This Court thus takes judicial notice of the public judicial records—e.g. the briefs and court opinions—that were filed in the *Bussey* case.

correspondence. *See id.* at 9–11. On August 28, 2019, the Defendant, Elizabeth Warren, moved to dismiss, arguing both that the Court lacks subject matter jurisdiction to hear this case, *see* Mot. at 2–7, and that the Plaintiff fails to state a claim, *see id.* at 7–9.

## THE LAW

Under Federal Rule of Civil Procedure 12(b), a defendant may move for dismissal of a claim on the basis of on one or more of seven specific defenses: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. *See* FED. R. CIV. P. 12(b).

"A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). "On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

A motion to dismiss under Rule 12(b)(1) may attack subject matter jurisdiction either facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). On a facial challenge, the Court must, as with other Rule 12(b) motions, limit its review to the factual allegations in the complaint—accepting well-pled allegations as true. *Id.* A factual attack, however, challenges "the existence of subject matter jurisdiction in fact" and requires that the Court examine materials outside of the pleadings, such as testimony, declarations, and affidavits, to ensure the proper exercise of its jurisdiction. *Id.*

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

Article III of the United States constitution requires "a federal court to satisfy itself of its subject-matter jurisdiction before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999). Because a suit against a federal officer is construed as a suit against the United States, *see Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)—and given that the United States is generally immune from suit unless it has explicitly waived that immunity[2]—the Court must, before it may adjudicate the merits of the Plaintiff's claim, determine whether an explicit waiver of sovereign immunity has been established in this case.

### I. Subject Matter Jurisdiction

The Plaintiff brings suit against Elizabeth Warren in her official capacity as Clerk of the United States District Court for the Middle District of Florida. *See generally* Compl. Suits against federal officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978). Thus, where a federal official is sued in her official capacity, the doctrine of sovereign immunity applies. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). And,

---

[2] *See S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, No. 19-80240-CIV-ALTMAN, 2019 WL 3285533, at *3 (S.D. Fla. July 22, 2019) (citing *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015)).

under that doctrine, the United States is generally immune from suit unless it has explicitly waived that immunity by statute. *See S. Spanish Trail, LLC*, 2019 WL 3285533, at *3 (citation omitted).

To be sure, this general rule is subject to a number of specific exceptions—among them, the "*Larson-Dugan* exception." *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–622 (1963). Under that exception, when a plaintiff seeks specific relief in the form of an order forcing a "public official to perform a duty imposed upon him in his official capacity . . . no separate [statutory] waiver of sovereign immunity is needed." *Washington Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (describing the *Larson-Dugan* exception).

But the enactment of the Administrative Procedure Act (the "APA") in 1976 has cast grave doubts on the continued vitality of the *Larson-Dugan* exception. Specifically, because both the APA and the *Larson-Dugan* exception delineate the circumstances under which a federal official's sovereign immunity may be set aside, federal courts have openly questioned whether the APA has, by implication, abrogated the exception. *See, e.g.*, *E.V. v. Robinson*, 906 F.3d 1082, 1097 (9th Cir. 2018) (holding that the APA did not abrogate the *Larson-Dugan* exception in suits where the APA waiver of sovereign immunity does not apply), *appeal docketed*, No. 18-81400 (U.S. May 6, 2019); *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011). This inquiry is not purely academic. In *Block v. N. Dakota*, the Supreme Court elected not to reach the question of *Larson-Dugan*'s applicability to the issues presented in that case because the Quiet Title Act—a different federal statute that, no less than the APA, worked an explicit waiver of sovereign immunity—represented the only mechanism by which litigants could challenge the federal government's title to real property. *See Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). *Block* thus suggests that, at least with respect to claims under the Quiet Title Act, *Larson-Dugan*

is no longer viable. Of course, the Supreme Court has not yet reached the salient question here: whether the APA similarly supplants the *Larson-Dugan* exception in suits seeking to enforce the federal common law right of access to public records.

Fortunately, this Court need not reach this thorny question here. Because the Plaintiff has not sought to quiet title, *Block* plainly does not apply. And the APA is equally inapplicable because its waiver of sovereign immunity governs only "agencies," *see* 5 U.S.C. § 702—and, by its terms, the APA expressly excludes "the courts of the United States" from its definition of "agencies," *see* 5 U.S.C. § 701(b)(1)(B). *Larson-Dugan* is thus the only doctrine that *might* except the Defendant's sovereign immunity here.

In her Motion, the Defendant argues that *Larson-Dugan* does not apply to this case because there "is no allegation of action taken in violation of statutory limits or of an unconstitutional act." Mot. at 6. Relying on *Larson*, she notes that the Supreme Court limited the exception to cases in which the federal official exceeded her statutory authority or otherwise acted in an unconstitutional way. *See, e.g.*, *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976) (outlining the contours of the *Larson-Dugan* exception).[3] In fact, the Defendant adds, in *Larson* itself the Supreme Court rejected the plaintiff's invitation to expand the exception to a "third category of cases"—those in which an official's actions are "illegal as a matter of general law, whether or not it be within his delegated powers." *Larson*, 337 U.S. at 692. Against all this, the Plaintiff failed to identify even a single statute that would have directed Ms. Warren to release the

---

[3] Decisions of the former Fifth Circuit issued prior to October 1, 1981, are binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

records he requested—a failure that, the Defendant says, is fatal to his claim that the *Larson-Dugan* exception has been satisfied.[4]

But, unfortunately for the Defendant, the statute dealing with the "Powers and duties of clerks and deputies," 28 U.S.C. § 956, provides that the "clerk of each court and his deputies and assistants shall exercise the powers and perform the duties assigned to them by the court." 28 U.S.C. § 956.[5] Put another way, if the Local Rules of the Middle District of Florida govern the circumstances under which the Clerk of Court is permitted to release court files, then the Clerk's decision not to release those files could, at least theoretically, violate the statute. And they do. Local Rule 1.08 provides that "Court files or other papers or records in the possession of the Clerk may be removed from the Clerk's Office only upon written permission or order of the Court which shall specify the time within which the same shall be returned." M.D. Fla. L.R. 1.08.

Thus, while it is true that, as the Defendant points out, the right to inspect judicial records is a right rooted in the common law, *see* Mot. at 7, the Clerk's decision to release (or, as the case may be, not to release) those records is, at least in the Middle District of Florida, guided by a federal statute. In this way, the merits of the Plaintiff's claim—whether the Clerk violated her statutory duty—is inextricably entwined with the all-important question of jurisdiction. *See Washington Legal Found.*, 89 F.3d at 901–02 (whether "the *Larson-Dugan* exception applies to this case depends upon whether the Government has a duty to the plaintiff, *viz.* to allow it access to certain government records . . . ." In such cases, "the question of jurisdiction merges with the question on the merits, to which we now turn.").

---

[4] There is no plausible claim that the Clerk's refusal to turn over the records violated the Plaintiff's constitutional rights—the only other avenue left open by *Larson*. *See, e.g.*, *Naylor*, 530 F.2d at 1226.

[5] Because the Court must satisfy itself of the extent of its own jurisdiction, *see Ruhrgas*, 526 U.S. at 575, the Plaintiff's failure to cite this statute is of no moment here.

## II. The Common Law Right of Access

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right extends to both the media and the general public. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Notably, the party seeking access to the records need not establish any proprietary interest in them. *See Nixon*, 435 U.S. at 589.

The right to inspect and copy judicial records is founded on the presumption that "criminal and civil actions should be conducted publicly," and that public access is "an essential component of our system of justice" because it is "instrumental in securing the integrity of the process." *FTC v. AbbVie Prod. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (citations omitted) (cleaned up). In this important way, public access "protects the citizen's desire to keep a watchful eye on the workings of public agencies" and marshals "a newspaper publisher's intention to publish information concerning the operation of government." *Comm'r, Alabama Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019) (citing *Nixon*, 435 U.S. at 597–98).

Whether a document is a judicial record subject to the common law right of access is a question of law for the Court. *See Advance Local Media*, 918 F.3d at 1165. The Eleventh Circuit has held that the common law right of access applies *only* to judicial documents that are "integral to judicial resolution of the merits." *See id.* at 1167–68 (collecting cases). A document need not be filed on the docket to be protected. *See Newman v. Graddick*, 696 F.2d 796, 799 (11th Cir. 1983) (a list of prisoners is subject to the right). Generally, however, the "common-law right of access does not extend to information collected through discovery which is not a matter of public record." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987). But, where a document is

filed on the public docket, the type of filing to which it is attached is a factor for the Court to consider in deciding whether the document constitutes a judicial record. *See Advance Local Media*, 918 F.3d at 1166–68.

Even if a document is a judicial record, however, the "common law right of access may be overcome by a showing of good cause, which requires balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (cleaned up). Thus, if a court concludes that a particular document is a judicial record, it must then "balance [the] competing interests of the parties . . . in light of the relevant facts and circumstances of the particular case." *Advance Local Media*, 918 F.3d at 1166–68 (citations omitted). In determining whether a defendant has established "good cause" to overcome the common law right, courts look to the nature and character of the information requested and evaluate such factors as "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events and whether the press has already been permitted substantial access to the contents of the records." *Newman*, 696 F.2d at 803; *see also Romero*, 480 F.3d at 1246.

The eight document requests the Plaintiff propounded on the Clerk's office can be roughly grouped into the following four categories: (i) the "policy changes" of two federal judges; (ii) the specific "policy changes" of Judge Conway; (iii) records relating to the reassignment of cases generally, and the reassignment of the *Bussey* case specifically; and (iv) the private correspondence between Judge Honeywell and Judge Mendoza about the *Bussey* case. *See* Compl. at 4–5.

These are not judicial records. None of these documents were filed with the Court. None were attached to any motion—substantive or otherwise. None were analyzed by the parties in

relation to the underlying dispute. And none were relied upon by Judge Mendoza either in dismissing the *Bussey* case or in sanctioning the Plaintiff. In short, none of these records were in any way "integral" (or, for that matter, related) to the Court's resolution of *Bussey*'s merits. *C.f. Advance Local Media*, 918 F.3d at 1167–68.

Some recent decisions from the Eleventh Circuit lend further support to this conclusion. In *Chicago Tribune*, for instance, the court drew a distinction between records obtained through discovery and records attached to a substantive filing, holding that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Chicago Tribune Co*, 263 F.3d at 1312. Similarly, in *Advance Local Media*, the Eleventh Circuit, broadening the standard it announced in *Chicago Tribune*, ruled that a lethal injection protocol constituted a judicial record, even though it was never filed with the court, "because it was submitted to the district court to resolve disputed substantive motions in the litigation, was discussed and analyzed by all parties in evidentiary hearings and arguments, and was unambiguously integral to the court's resolution of the substantive motions." *Advance Local Media, LLC*, 918 F.3d at 1168.

None of the relevant factors outlined in either *Chicago Tribune* or *Advance Local Media* are present here. The Plaintiff seeks records that were never submitted to the Court, were not discussed by the parties, and were in no way necessary to the resolution of the *Bussey* case. The Plaintiff's claim thus fails both the rule enunciated in *Chicago Tribune*—because it was not attached to a substantive motion—and the more permissive standard set out in *Advance Local Media* (because it was unnecessary to the court's resolution of *Bussey*'s merits).

11

Relying on *In re Brown*, 346 F.2d 903 (5th Cir. 1965), the Plaintiff suggests that an improper case reassignment may be relevant to the transferee court's jurisdiction. But the issue in *In re Brown*—as the Plaintiff himself identifies, *see* Resp. at 8 n.19—was whether counsel in a specific case could be sanctioned by a judge to whom the case *had not been assigned*. *See In re Brown*, 346 F.2d at 910. That question is plainly irrelevant here, where Judge Mendoza—to whom the *Bussey* case was indisputably assigned—sanctioned the Plaintiff for his actions *in that case*. In any event, the Eleventh Circuit has already rejected the Plaintiff's argument that, because of the allegedly improper reassignment, Judge Mendoza was without jurisdiction to sanction him. *See Bussey-Morrice*, 775 Fed. Appx. at 1004. Thus, even if the Plaintiff could argue that the documents he seeks are integral to some dispute over Judge Mendoza's jurisdiction to hear the *Bussey* case, *see* Resp. ¶ 8—an argument he would likely lose in any case[6]—his contention would be foreclosed by the Eleventh Circuit's decision in *Bussey*. *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1498 (11th Cir. 1996).

In short, neither the Judges' various "policy changes," their documents relating to the reassignment of the *Bussey* case, nor their private correspondence about the *Bussey* decision were "integral to judicial resolution of the merits" of a case. *Advance Local Media*, 918 F.3d at 1167–68. Those documents are thus plainly not judicial records—and, as such, the Court need not reach the secondary question of whether the balance of relative interests favors the Plaintiff here. Because, in short, the Defendant did not violate the Middle District of Florida's Local Rules in refusing to release the records, her actions likewise did not constitute violations of 28 U.S.C. § 956. By definition, then, her decision did not, as the Plaintiff avers, work a waiver of her sovereign

---

[6] *See Advance Local Media*, 918 F.3d at 1167-68 (holding that the common law right of access applies *only* to judicial documents that are "integral to judicial resolution of the merits" of a case).

immunity under *Larson-Dugan*. *See Naylor*, 530 F.2d at 1226. The Court thus lacks subject-matter jurisdiction over this case. *See S. Spanish Trail, LLC*, 2019 WL 3285533, at *3 (citation omitted).

Accordingly, the Court hereby

**ORDERS and ADJUDGES** that the Defendant's Motion to Dismiss [ECF No. 17] is **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 30th day of September 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record